IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

DENNIS MALIPURATHU,          )
                             )
            Petitioner,      )
                             )
v.                           )      Case No. 15-CV-182-JHP-PJC
                             )
MICHAEL WADE, Warden,        )
                             )
            Respondent.      )

# OPINION AND ORDER

Before the Court is Petitioner Dennis Malipurathu's habeas corpus petition under 28 U.S.C. § 2241 (Dkt. 1). Petitioner is serving two concurrent 15 year sentences imposed by the Custer County District Court, Case Nos. CF-2007-296 and CF-2007-313. Dkt. 12, Reply Brief at 6 (hereinafter "Reply"). He challenges the State's execution of the sentences while he was incarcerated at the Howard McLeod Correctional Center (HMCC). Specifically, Petitioner argues HMCC officials violated the Due Process Clause by refusing to consider relevant evidence during a disciplinary proceeding. Respondent contends Petitioner failed to exhaust his state remedies, and in any event, the claim fails on the merits. For the reasons below, the Court finds Petitioner received due process during the disciplinary proceeding and will deny the habeas petition.

## I. Background

The incident leading to discipline occurred in 2014, when Petitioner was assigned to work in HMCC's food service division. Dkt. 12, Reply, at 8; *see also* Dkt. 11-2, Offense Report, at 1. Petitioner alleges he has a musculoskeletal condition, which limits his mobility by 15%. Dkt. 12, Reply, at 8. He contends he notified Roseanna Nichols, HMCC's Food Service Supervisor (FS Supervisor), of his medical condition on January 12, 2014. *Id.* at 9. Three days later, Petitioner

filed a grievance against the FS Supervisor for "creating a hostile work environment" by yelling at the inmates. *Id.* FS Supervisor issued an offense report against Petitioner on the same day. Dkt. 11-2, Offense Report, at 1. The report reflects FS Supervisor ordered Petitioner to wipe down the dining tables, but he instead entered the "tray room" to talk to other inmates. *Id.* Petitioner signed the Offense Report on January 17, 2014 and requested a hearing. *Id.*

HMCC appointed Brenda Clifton (Investigator) to investigate the matter. Dkt. 11-3, Investigator's Report, at 1. At the time, Petitioner argued the "camera will show [he] was wiping tables." *Id.* Petitioner designated one witness, fellow inmate George Barrow, who also testified Petitioner wiped the tables as directed. *Id.* at 4. The Report further reflects Petitioner received a copy of all evidence against him. *Id.* at 1. However, on the page titled: "Record of Delivery of Copies of Evidence to Offender," the Investigator wrote "refused to sign" above Petitioner's signature line. *Id.* at 2. Petitioner admits the Investigator left the documents in his prison cell after he refused to sign for them and argued "all evidence[] had not been gathered." Dkt. 12, Reply, at 10.

HMCC held a disciplinary hearing on January 29, 2014 and determined Petitioner was guilty of Disobedience to Orders, 12-1/A. Dkt. 11-4, Hr. Report, at 1. The ruling was predicated on the FS Supervisor's eyewitness statement. *Id.* The hearing officer acknowledged Petitioner's medical condition, but observed his medical records did not prohibit Petitioner from working in the dining area. *Id.* The restrictions appeared to prevent Petitioner from walking on wet surfaces (such as the tray room). *Id.* The hearing officer revoked 120 days of earned credits; imposed a $10 fine; and placed Petitioner in disciplinary segregation for 20 days. *Id.*

Petitioner filed an internal appeal on January 31, 2014. Dkt. 11-5, Appeal Form, at 1. He alleged HMCC refused to: (a) provides copies of the evidence; (b) entertain statements from

witnesses; (c) allow Petitioner to present documentary evidence; (d) appoint an unbiased hearing officer; and (e) obtain Petitioner's signature on the evidentiary notice. *Id.* at 1-2. He also argued the evidence was insufficient to support a finding of guilt. *Id.* HMCC conducted a "due process review" and found no violation. Dkt. 11-6, Internal Review Form, at 1. Petitioner again refused to sign the ruling. *Id.* Petitioner sought additional review from the Oklahoma Department of Corrections, but the Director of Prisons agreed with HMCC's determination. Dkt. 11-7, Administrative Review Form, at 1; *see also* Dkt. 11-8, Response, at 1.

On May 30, 2014, Petitioner filed a motion seeking judicial review in the Oklahoma County District Court (State Court), Case No. CV-2014-948. Dkt. 11-9, O.R., at 1. By a Judgment entered August 27, 2014, the State Court denied the motion. Dkt. 11-10, O.R. at 4. Petitioner contends the State Court failed to send him a copy of the Judgment, and he therefore missed the deadline to appeal. Dkt. 11-12, Reply, at 13. He filed a motion seeking permission to appeal out of time, which the State Court denied. Dkt. 11-13, O.R., at 1; 11-14, O.R., at 1.

On March 9, 2015, Petitioner filed his federal § 2241 petition. Dkt. 1. The petition raises a claim under the Due Process Clause. *Id.* at 3-5. He now contends he was physically unable to comply with the FS Supervisor's directive, and the HMCC hearing officer refused to consider or misinterpreted medical records to that effect. *Id.* He asks the Court to vacate his sanction; restore 140 earned credits to his account;[1] and order reimbursement of the $10 fine. *Id.* at 5.

Respondent filed a substantive response along with relevant copies of the disciplinary and State Court records. Dkt. 11. He argues the Petition is procedurally barred because Petitioner failed to perfect a direct appeal following the denial of his motion for judicial review. *Id.*

---

[1] This figure includes the 120 earned credits HMCC revoked, plus 20 credits Petitioner would have earned had he not spent 20 days in disciplinary segregation. Dkt. 1, Petition, at 5.

3

Respondent alternatively contends the due process claim fails on the merits. Petitioner filed a Reply, which amplifies his due process arguments and attaches additional medical records. Dkt. 12, Reply. The Reply also requests an evidentiary hearing. *Id.* at 24.

## II. Discussion

### A. Legal Standard and Evidentiary Hearing Requirements

"[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody…." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Petitions for habeas corpus made pursuant to 28 U.S.C. § 2241 "are used to attack the execution of a sentence" rather than the validity of a conviction and sentence. *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997). Relief is available under § 2241 where the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

A habeas petitioner "is entitled to receive an evidentiary hearing so long as his allegations, if true and if not contravened by the existing factual record, would entitle him to habeas relief." *Miller v. Champion*, 161 F.3d 1249, 1253 (10th Cir. 1998); *see also United States v. Lopez*, 100 F.3d 113, 119 (10th Cir. 1996) ("In response to a [28 U.S.C.] § 2255 motion, the district court must hold an evidentiary hearing on the prisoner's claims unless the motion and files and records in the case conclusively show that the prisoner is entitled to no relief.") (quotations omitted); *Wilson v. Oklahoma*, 335 Fed.Appx. 783, 784 (10th Cir. 2009) (finding no error where district court denied applicant evidentiary hearing on 28 U.S.C. § 2241 petition where "nothing in the record [ ] indicate[d] [the applicant] is entitled to any relief"). However, district courts need not hold evidentiary hearings "without a firm idea of what the testimony will encompass and how it will support a movant's claim." *United States v. Cervini*, 379 F.3d 987, 994 (10th Cir. 2004).

The Petition and Reply contain detailed allegations setting forth Petitioner's version of

4

events. *See generally* Dkt. 1; Dkt. 12. Both filings attach documentary evidence, including medical records that Respondent allegedly rejected or misconstrued during the disciplinary proceeding. Dkt. 1, Petition, at 25-30; *see also* Dkt. 12, Reply, at 25-30. Petitioner fails to identify what additional evidence, if any, he would proffer at a hearing or how that evidence could change the result. Therefore, after reviewing the record, the Court concludes an evidentiary hearing is not warranted.

   **B. Exhaustion**

   As an initial matter, Respondent contends the Petition must be dismissed as procedurally barred. Dkt. 11, Response, at 4. He points out that Petitioner did not appeal the adverse State Court ruling as required by OKLA. STAT. tit. 57, § 564.1. *Id.* In his Reply, Petitioner raises a new due process "proposition" (Proposition 1) and claims the State Court violated his rights by failing to timely transmit a copy of the Order Denying Judicial Review. Dkt. 12, Reply, at 2. Although a petition cannot raise a new claim through his reply brief, *see Beaird v. Seagate Technology, Inc.,* 145 F.3d 1159, 1164 (10th Cir. 2003), the Court will liberally construe Proposition 1 as a defense to Respondent's exhaustion argument.

   Section 2241 does not contain an explicit exhaustion requirement, but the Tenth Circuit has held state inmates challenging the execution of their sentence must still exhaust available state remedies. *See Montez v. McKinna,* 208 F.3d 862, 866 (10th Cir. 2000) ("A habeas petitioner is generally required to exhaust state remedies whether his action is brought under § 2241 or § 2254."). "The exhaustion requirement is satisfied if the federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a postconviction attack." *Dever v. Kan. State Penitentiary,* 36 F.3d 1531, 1534 (10th Cir. 1994). "Fair presentation, in turn, requires that the petitioner raise in state court the 'substance' of his

5

federal claims." *Williams v. Trammell*, 782 F.3d 1184, 1210 (10th Cir. 2015). "This includes not only the [federal] constitutional guarantee at issue, but also the underlying facts that entitle a petitioner to relief." *Id.* *See also Fairchild v. Workman*, 579 F.3d 1134, 1149 (10th Cir. 2009) ("A claim is more than a mere theory on which a court could grant relief; a claim must have a factual basis, and an adjudication of that claim requires an evaluation of that factual basis.") (quotations omitted).

The Court agrees Petitioner failed to exhaust state remedies by timely perfecting an appeal, although he may be able to overcome the procedural bar by demonstrating the State Court failed to send notice of the Order. In any event, courts are free to overlook the procedural bar where, as here, the claim fails on the merits. *See Thacker v. Workman*, 678 F.3d 820, 848 (10th Cir. 2012). The Court will therefore address Petitioner's due process arguments.

### C. Due Process Requirements for Disciplinary Proceedings

The Fourteenth Amendment guarantees due process "when a person is to be deprived of life, liberty, or property." *Templeman v. Gunter,* 16 F.3d 367, 369 (10th Cir. 1994). "It is well settled that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the … Fourteenth Amendment." *Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996) (citing *Taylor v. Wallace*, 931 F.2d 698, 700 (10th Cir. 1991)). As the Supreme Court explained: "Where a prisoner has a liberty interest in good time credits, the loss of such credits threatens his prospective freedom from confinement by extending the length of imprisonment." *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985).

An inmate's due process rights are not unlimited in the prison setting, however. "[D]isciplinary proceedings take place in a closed, tightly controlled environment peopled by

6

those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so." *Hill*, 472 U.S. at 454. Further, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). To meet the standards of due process in a prison disciplinary proceeding:

> the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Hill*, 472 U.S. at 454.

If these requirements are met, the Court will not overturn the revocation of earned credits as long as *some evidence* supports the decision. *Gwinn,* 354 F.3d at 1219. This is true "even if the evidence … is meager." *Id. See also United States ex rel. Vajtauer v. Comm'r of Immigration*, 273 U.S. 103, 106 (1927) ("[I]t is sufficient that there was some evidence from which the conclusion of the administrative tribunal could be deduced and that it committed no error so flagrant as to convince a court of the essential unfairness of the [proceeding]."); *Hill*, 472 U.S. at 455–56 ("the relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board.") (emphasis added). Moreover, "[i]n ascertaining whether a [disciplinary] decision … is sufficiently supported by the evidence, a reviewing court need not undertake an 'examination of the entire record, independent assessment of witnesses' credibility or weighing of the evidence.'" *Gwinn,* 354 F.3d at 1219 (quoting *Hill*, 472 U.S. at 455).

Finally, even if the Court finds a due process violation, the disciplinary decision is subject to a harmless error review. *See Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006) (holding

7

that the prison official's error in denying witness testimony was subject to harmless error review). *See also Farrakhan-Muhammad v. Oliver,* 688 Fed. App'x 560, 564 (10th Cir. 2017) ("Still, though prison officials must consider an inmate's request to call or confront a particular witness on an individualized basis, any errors made by prison officials in denying witness testimony at official hearings are subject to harmless error review.") (quotations omitted).

After carefully considering the record, the Court finds HMCC satisfied all three requirements set forth in *Hill*. The record reflects he received advance written notice of the disciplinary charges, as he signed the Offense Report on January 17, 2014. Dkt. 11-2, Offense Report, at 1. Petitioner had an opportunity to present witness testimony in the form of a statement from fellow inmate George Barrow. Dkt. 11-3, Investigator's Report, at 4. Further, Petitioner admits he provided documentary evidence during the hearing. Dkt. 1, Petition, at 3. This is confirmed by the Disciplinary Ruling, which appears to refer to the same medical record Petitioner now proffers in his defense. *Compare* Dkt. 11-4, Hr. Report, at 1 (making findings and referencing a medical report directing Petitioner to avoid wet floors), *with* Dkt. 12, Medical Progress Note Attached to Reply, at 29 (containing the same medical limitation). Finally, the Hearing Report constitutes "a written statement by the factfinder" and describes "the evidence relied on and the reasons for the disciplinary action." *Hill*, 472 U.S. at 454.

Notwithstanding these safeguards, Petitioner argues the hearing officer violated his due process rights by refusing to consider and/or misinterpreting exonerating medical records. Dkt. 1, Petition, at 3. He challenges the hearing officer's finding that "nowhere in Offender's medical restrictions does it state that he cannot work in food services." *Id.* According to Petitioner, he proffered a Medical Progress Note at the hearing, which states: "Based upon medical examination and/or review offender is cleared and approved to work in food service: No." Dkt. 12, Medical

Progress Note attached to Reply, at 29-30. Even if the hearing officer misinterpreted or ignored such record, it does not justify overturning HMCC's sanction, for two reasons. First, it is unclear whether Petitioner's medical restrictions were documented when he refused to comply with the FS Supervisor's order. The record in question is dated January 23, 2014, which is about one week after the incident occurred on January 15, 2014. Dkt. 12, Medical Progress Note attached to Reply, at 29-30. The only pre-incident medical record Petitioner proffers is a Request for Health Services dated January 11, 2014. Dkt. 12, Exhibit to Reply, at 25. In that document, Petitioner requested that his file reflect chronic back problems, and the doctor responded: "I see no restrictions in your medical file, however I will make an appointment so you can discuss why you need them." *Id.* Further, and importantly, even if Petitioner's limitations were well documented, the sanction was based on insubordination. There was "some evidence," namely a statement by the FS Supervisor, that Petitioner ignored a direct order and walked away to visit with other inmates rather than stopping to explain his limitations. Dkt. 11-4, Hr. Report, at 1. The Court therefore finds no due process violation in connection with HCMM's consideration of evidence.

Petitioner also appears to argue the hearing officer was biased. Dkt. 12, Reply, at 18. "An impartial decision maker is a fundamental requirement of due process that is fully applicable in the prison context." *Gwinn v. Awmiller*, 354 F.3d 1211, 1220 (10th Cir. 2004). The Court presumes bias exists where the hearing officer was involved in the charged offense, including as an investigator or advocate. *Id.* A petitioner can also show bias by pointing to prior dealings with the hearing officer that may unfairly color his decision. *Id.* In this case, Petitioner has not alleged the hearing officer was involved in the charged offense, nor has he pointed to any preexisting bias the hearing officer may have had. Petitioner instead contends the hearing officer

"dishonestly suppressed evidence of actual innocence" by making an incorrect finding regarding Petitioner's medical limitations. Dkt. 12, Reply, at 18. It is well established that factual errors, without more, do not evidence bias on the part of a decision maker or amount to a due process violation. *See Liteky v. United States*, 510 U.S. 540, 556 (1994). Petitioner's bias argument therefore fails.

Petitioner finally contends the hearing officer inappropriately excluded video evidence of the incident. Dkt. 12, Reply, at 23. The refusal to produce video evidence during a disciplinary proceeding can, under some circumstances, amount to a due process violation. *See Howard v. U.S. Bureau Of Prisons,* 487 F.3d 808, 814 (10th Cir. 2007) (noting the prison's "unjustified refusal to produce and review [potentially exonerating video tapes] deprived [petitioner] of the process due him"). In this case, however, the video evidence would not have exonerated Petitioner. Although he initially argued the video would show he wiped the tables as directed - and even had a fellow inmate testify to that effect - Petitioner now contends he was physically unable to comply. *Compare* Dkt. 11-3, Investigator's Report, at 1 (the "camera will show [Petitioner] was wiping tables"), *with* Dkt. 1, Petition, at 3 (arguing the FS Supervisor "gave Petitioner a verbal directive to perform a task with intimate knowledge that Petitioner could not perform the task") (emphasis in original). Consequently, to the extent the hearing officer refused to consider video evidence, any error was harmless.

Based on the foregoing, the Court concludes HMCC complied with federal due process requirements in connection with Petitioner's disciplinary proceeding. The Petition will be denied with prejudice.

## IV. Certificate of Appealability

Habeas Corpus Rule 11[2] requires "[t]he district court [to] . . . issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate may only issue "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court rejects the merits of petitioner's constitutional claims, he must make this showing by "demonstrat[ing] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons discussed above, Petitioner has not made the requisite showing on any of his claims. The Court therefore denies a certificate of appealability.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The petition for a writ of habeas corpus (Dkt. 1) is **denied**.

3. A certificate of appealability is **denied**.

4. A separate judgment will be entered herewith.

ORDERED this 24th day of September 2018.

James H. Payne
United States District Judge
Northern District of Oklahoma

---

[2] "Habeas Corpus Rule" refers to the Rules Governing Section 2254 Cases in the United States District Courts, effective February 1, 1997 and amended on February 1, 2010. The Court, in its discretion, applies those rules to the § 2241 petition. *See* Habeas Corpus Rule 1(b) ("The district court may apply any or all of these rules to [other types of] habeas corpus petitions"); *Boutwell v. Keating*, 399 F.3d 1203, 1211 n. 2 (10th Cir. 2005) (citing Rule 1(b), and holding the district court acted within its discretion by applying Section 2254 Rules to a section 2241 petition); *McFarland v. Scott*, 512 U.S. 849, 114 (1994) (citing Rule 4, and noting courts are authorized to summarily dismiss any habeas petition that appears legally insufficient on its face).